# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK DANE,<br>Individually and on Behalf of All Others<br>Similarly Situated,<br>      Plaintiff,<br><br>      v.<br><br>UNITEDHEALTHCARE INSURANCE<br>COMPANY, et al.,<br>      Defendants. | No. 3:18-cv-00792 (SRU) |

## ORDER ON MOTION TO DISMISS

Plaintiff Mark Dane ("Dane"), individually and on behalf of all others similarly situated, brings this suit against Defendants AARP, Inc., AARP Services, Inc., AARP Insurance Plan, UnitedHealthCare Insurance Company and UnitedHealth Group, Inc.

Dane brings claims on behalf of a purported nationwide class of current and former insureds who purchased United Medigap coverage. *Id.* at ¶ 95. He asserts seven Connecticut-law causes of action: (1) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b; (2) breach of contract; (3) unjust enrichment; (4) breach of the implied covenant of good faith and fair dealing; (5) money had and received; (6) conversion; and (7) statutory theft. *Id.* at ¶¶ 118-169. He also asserts one District of Columbia claim: violation of the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904 *et seq*. Dane seeks a permanent injunction and declaratory relief that will end United's payments to AARP, as well as "disgorgement and restitution of all monies taken" from the class and paid to AARP. Pl's Mem., Doc. No. 70, at 6.

For the reasons set forth below, the motion to dismiss, Doc. No. 64, is granted, and the case is dismissed.

I.  **Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## II. Background

AARP is a Section 501(c)(4) tax-exempt nonprofit organization that advocates for seniors' interests, and United is an insurance corporation. *See* First Amended Complaint ("FAC"), Doc. No. 61, at ¶¶ 31, 35. United offers a Medigap insurance program to individual AARP members across the country. *See id.* In 1997, United and AARP entered into an agreement in which United licensed AARP's intellectual property, including the AARP name, trademarked logo, and membership list, to be used in the Medigap program. *Id.* at ¶ 13. United pays for the use of AARP's intellectual property. AARP Trust is a group policyholder for AARP Medigap, an insurance product of United. FAC, Doc. No. 61, at ¶ 33.

The principal issue raised in this case is whether a group policyholder can take a percentage cut of a member insured's monthly insurance payments that flow through the group plan on their way to the insurer other than for reimbursement of expenses in administering a group insurance plan. Defendants argue that the percentage cut is payment for an intellectual property license for use with the program in exchange for a royalty. Dane, however, contends that the percentage cut constitutes a "premium rebate", or kickback, in violation of state anti-rebating laws, including the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815, *et seq.*, and the District of Columbia anti-rebating statute, D.C. Code § 31-2231.12. Dane seeks a permanent injunction and declaratory relief that will halt the alleged kickbacks from occurring in the future as well as disgorgement and restitution of all monies paid to AARP in violation of Connecticut law, District of Columbia law, and the health insurance policy.

3

**III. Discussion**

Dane argues the following: (1) AARP Trust is wholly dominated and controlled by AARP, Inc., and United pays AARP in the form of a "premium rebate"; (2) individual consumers, including himself, are harmed by Defendants' "scheme" because they are forced to absorb the costs of the inducement in the form of a 4.9% surcharge on top of premiums; (3) the most current version of the AARP kickback has been kept "secret and confidential"; (4) Defendants' reliance on the filed rate doctrine, which bars suits against regulated utilities grounded on the allegation that the rates charged by the utility are unreasonable, is misplaced because the case involves only state law claims; and (5) Defendants violated CUTPA or CPPA by mischaracterizing the alleged "premium rebate" to AARP as a royalty. Dane also raises several common law claims.

For the reasons that follow, I reject Dane's arguments and grant Defendants' motion to dismiss.

1. *The AARP Royalty is not an Unlawful "Premium Rebate"*

Connecticut's anti-rebate statute prohibits any "insurance company doing business in [Connecticut] from "pay[ing] or allow[ing] or offer[ing] to pay or allow, as *inducement to insurance*, any rebate of premium payable on the policy . . . or any valuable consideration []or inducement not specified in the policy of insurance." Conn. Gen. Stat. § 38a-825 (emphasis added). The District of Columbia's anti-rebate statute is similar. D.C. Code § 31-2231.12(a)(2).

The FAC does not provide facts to support a theory that a payment to AARP induces AARP members to choose United Medigap overage over other insurance options because individual insureds are not receiving any monetary award for choosing United. AARP is a distinct entity from AARP Trust, which is the group policyholder. *See* Agreement and

Declaration of Trust ("Agreement"), Doc. No. 61-4, at §§ 2.1, 2.3. AARP Trust reimburses United only for administrative expenses, rather than for "referrals". *See* Agreement, Doc. No. 61-4, at §§ 4.2, 6.1, 6.2.

The payments that AARP makes to United are for use of AARP's intellectual property. *See* Agreement, Doc. No. 61-4, at § 6.1 ("AARP shall be entitled to receive an allowance for AARP's sponsorship . . . and the license to use the AARP Marks.").

The alleged rebate is not paid to the ultimate insureds, so United cannot be said to be influencing individual insured's purchasing decisions. Because Dane does not plausibly allege that policyholder AARP Trust is induced in any way, the royalty payment cannot plausibly be viewed as a premium rebate.

2. *Dane's "Premium Rebate" Claim is Barred by the Filed Rate Doctrine*

Even if Dane's premium rebate theory were plausible, the filed rate doctrine precludes this lawsuit.

"The filed rate doctrine bars suits against regulated utilities grounded on the allegation that the rates charged by the utility are unreasonable." *Wegoland Ltd. v. NYNEXT Corp.*, 27 F.3d 17, 18 (2d Cir. 1994). It holds that any rate approved by the governing regulatory agency is "per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Id.* The Second Circuit has held that "two companion principles lie at the core of the filed rate doctrine: first, that legislative bodies design agencies for the specific purpose of setting uniform rates, and second, that courts are not institutionally well suited to engage in retroactive rate-setting." *Id.* at 19 (*quoting Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 415 (S.D.N.Y. 2009), *aff'd sub nom. Roussin v. AARP*, 379 F. App'x 30 (2d Cir. 2010)). In addition, "the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities

whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." *Roussin*, 664 F. Supp. 2d. at 415.

As a threshold matter, Connecticut's Department of Insurance ("CID") regulates and has approved United's Medigap premium rates in this case: CID is required by statute to ensure that health insurance benefits are reasonable in relation to the premiums charged. *See* Conn. Gen. Stat. § 38a-481. The insurer must file the premium rates with the commissioner and must obtain the commissioner's approval of those premiums before they may be charged. *Id.*[1]

a. The Filed Rate Doctrine can apply to Connecticut state law claims

Although Connecticut has not used the filed rate doctrine to bar a plaintiff's claim, in *Lentini v. Fidelity National Title Insurance Co. of New York*, the District of Connecticut recognized the filed rate doctrine as it applies to state law claims. In *Lentini*, District Judge Alvin W. Thompson held that the application of the filed rate doctrine is limited to preventing a plaintiff "from bringing a cause of action whenever either purpose underlying the filed rate doctrine is implicated." *Lentini v. Fid. Nat. Title Ins. Co. of New York*, 479 F. Supp. 2d 292, 300 (D. Conn. 2007) (quoting *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.,* 253 F. Supp. 2d 262, 275 (D. Conn. 2003)).

In addition, courts in New York and Texas have relied on the filed rate doctrine to dismiss challenges claiming damages relating to United's royalty payment analogous to the

---

[1] Federal Rule of Evidence 201, which governs adjudicative facts rather than legislative facts, states that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201. Judicial Notice of Adjudicative Facts, 1 Federal Evidence Rule 201 (4th ed.). Accordingly, I take judicial notice that the CID commissioner has approved the precise rates that Dane challenges here.

claims here. *See Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 417–18 (S.D.N.Y. 2009), *aff'd sub nom. Roussin v. AARP*, 379 F. App'x 30 (2d Cir. 2010), and *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 420 (S.D. Tex. 2016).

In *Roussin*, a member of a non-profit corporation brought a class action against the corporation, trust, and trustees, alleging breach of fiduciary duty with regard to defendants' approval of certain health insurance premium rates charged to members who participated in insurance plans offered by defendants. 664 F. Supp. 2d at 412. Defendants moved to dismiss for failure to state a claim. *Id.* The court held that the filed rate doctrine barred plaintiff's claims because, although the claims were "styled as breach of fiduciary duty and gross negligence, [the plaintiff] essentially [sought] relief from an injury allegedly caused by her payment of [] health care premiums, including [an] Allowance." *Id.* at 416. Therefore, the court held, the claims were barred by the filed rate doctrine. *Id.* The decision was then affirmed by the Second Circuit by summary order. *See Roussin*, 379 F. App'x 30.

In *Peacock*, insureds brought a class action against an advocacy association for retired persons and the insurer, alleging that they were forced to pay an illegal allowance fee for services relating to group Medicare supplemental health insurance. 181 F. Supp. 3d at 430. Insureds asserted claims under several provisions of the Texas Insurance Code as well as the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA). *Id.* The District Court granted defendants' motion to dismiss, but granted plaintiffs leave to amend. *Id.* Defendants moved to dismiss the amended complaint. *Id.* The district court held that the filed rate doctrine can go beyond merely imposing a rebuttable presumption that a rate at issue is reasonable, and held that the doctrine barred the insured's claims under the Texas DTPA. *Id.* at 440–41.

7

Dane argues that this case is analogous to *Friedman v. AARP, Inc.*, 283 F. Supp. 3d 873, 879 (C.D. Cal. 2018), rather than *Roussin* or *Peacock.* Defs' Mem., Doc. No. 64-1, at 20, n. 16. In *Friedman*, the district court held that the filed rate doctrine was not applicable because the claims were challenges to the alleged misuses by the defendants rather than challenges to the approved rate. *Friedman*, 283 F. Supp. 3d at 828. The claims in the present case, by contrast, all seek to attack the premiums charged by AARP and United.

The courts in *Roussin* and *Peacock* held that the filed rate doctrine applies to claims in which a plaintiff alleges that an approved rate is illegal and seeks to recover for illegal overcharges, which is what Dane is claiming here. I find those cases persuasive. Accordingly, the filed rate doctrine applies to Dane's state law claims in this case.

b. Principles Underlying the Filed Rate Doctrine

The nonjusticiability strand of the filed rate doctrine, as set forth by the Second Circuit – that courts should not involve themselves in the rate-making process or determinations of the reasonableness of such filed rates – is implicated by the complaint in this case.

In *Roussin*, the district court agreed with defendants' assertion that the filed rate doctrine barred plaintiff's claims because she was essentially challenging the reasonableness of the cost to her of AARP-sponsored health insurances rates, which the New York State Department of Insurance had approved. The court held that "[a]lthough the Complaint focuses its attention on the impropriety of the AARP Allowance and its method of calculation, such a dispute necessarily challenges [the] rate. As a result, [plaintiff] is challenging [United's] insurance premiums, albeit one particular element of the premiums, and thus her claims are barred by the filed rate doctrine." 664 F. Supp. 2d at 417–18 (citing *Porr v. NYNEX Corp.*, 660 N.Y.S.2d 440, 442 (2d

Dep't 1998) (filed rate doctrine bars claims based on an injury "allegedly caused by the payment of a rate on file with a regulatory commission")).

The Royalty Agreement attached to the complaint makes clear that the royalty is paid out of United's CID-approved Medigap premiums, rather than as a surcharge "on top of" Dane's premiums. Royalty Agreement, Doc. No. 1-4, at § 3.3.8 and § 6.1. In *Roussin*, the court held that plaintiff could not "avoid the application of the filed rate doctrine by purporting to challenge a portion of the rate at issue rather than the entire rate; to condone such an approach would gut the filed rate doctrine, as any future complainant would allege injuries stemming from only particular portions of a filed rate, rather than the entire rate." *Roussin*, 664 F. Supp. 2d at 418. The same is true here.

In his opposition memorandum, Dane cites to paragraph 25 of the FAC, in which he states that he seeks an order enjoining United to stop paying a rebate to AARP. Pl's Mem., Doc. No. 70, at 27. However, in the very next paragraph of the FAC, Dane states that he also seeks the return of all "royalty monies illegally taken from" Dane and the other class members. *See* FAC, Doc. No. 61 ¶ 26. Dane essentially seeks relief for an injury allegedly caused by his payment of his AARP health care premiums, which include the AARP royalty. Accordingly, Dane's argument that he is challenging only the practice of the unlawful rebate, and not United's Medigap premium as a whole is unpersuasive. Pl's Mem., Doc. No. 70, at 27.

Parsing the approved premium to consider the legality of one component of that premium would "enmesh the court in the rate-making process" that CID is more competent to perform. *See Roussin*, 664 F. Supp. 2d at 417 (quoting *Wegoland,* 27 F.3d at 19). The Medigap insurance rate at issue here is on file with the CID, a regulatory commission, and any remedy that requires a refund of a portion of the filed rate is barred. *See Marcus v. AT & T Corp.,* 938 F. Supp. 1158,

9

1170 (S.D.N.Y.1996) ("Any remedy that requires a refund of a portion of the filed rate ... is barred."), *aff'd,* 138 F.3d 46 (2d Cir. 1998).

Because he is seeking relief for an injury allegedly caused by the payment of a rate on file with a regulatory commission, Dane's claims are barred by the filed rate doctrine. *See Wegoland Ltd.*, 27 F.3d at 18.[2]

3. *Dane Does Not Plead a Viable CUTPA or CPPA Claim*

Even if Dane's claims could survive the conflict with the filed rate doctrine, the FAC would be dismissed because Dane fails to plead a viable CUTPA or CPPA claim under Connecticut and the District of Columbia consumer protection laws.

a. The CPPA Does Not Apply to Dane's Case

The District of Columbia Consumer Protection Procedures Act (CPPA), which "establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received" applies only to goods and services that have been purchased, leased, or received within the District of Columbia. D.C. Code § 28-3901.

Dane cites to *Shaw v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 141, 149–50 (D.D.C. 2007) to support the proposition that the CPPA has extraterritorial reach in this circumstance. But *Shaw* concerns the issue how to apply District of Columbia's choice-of-law principles to District of

---

[2] Dane filed a second Notice of Supplemental Authority, directing my attention to *Krukas v. AARP, Inc.*, in which the District Court for the District of Columbia denied the defendants' motion to dismiss, holding that the filed rate doctrine did not bar the plaintiff's claims. *See* Plaintiff's Notice of Supplemental Authority, Doc. No. 88-2, citing *Krukas*, No. 1:18-cv-01124 (D.D.C. Mar. 17, 2019). In that case, however, the complaint did not challenge the amount of the Medigap insurance rate or the amount collected by the insurance provider that had been approved by state insurance agencies. In *Krukas*, the plaintiff's claims focused on "AARP's description and practices related to the payments collected by AARP from each premium paid[.]" *Id.* at 28. Because Dane explicitly seeks a refund of his premiums rather than merely challenging AARP's description and practices related to payments collected by AARP, the court's reasoning in *Krukas* is not applicable here.

Columbia causes of action in cases involving diverse parties, and therefore does not apply to these facts. Accordingly, CPPA does not apply to Dane's purchase of insurance coverage in Connecticut.[3] Because Dane admits that he was enrolled in United Medigap in Connecticut and nowhere alleges that he purchased or received his policy or any other goods or services in the District of Columbia, the CPPA claim must be dismissed.

b. Defendants Did Not Engage in Misrepresentation

In addition, as discussed above, Dane does not plausibly allege that AARP Trust is induced in any way to purchase insurance, so the royalty payment cannot be viewed as a premium rebate. Accordingly, AARP did not misrepresent or fail to disclose that the royalty was an unlawful premium rebate, so Dane's CUTPA and CPPA claims fail.

c. Dane Does Not Allege Loss Causation Required to Establish Standing

To prevail on a CUTPA claim, in addition to proving that the defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, the plaintiff must also prove that "each class member claiming entitlement to relief under CUTPA has suffered an ascertainable loss of money or property as a result of the defendant[s'] acts or practices." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217–18 (2008) (internal citation omitted). Furthermore, "[t]he ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief....Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has

---

[3] *See In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *24 (S.D.N.Y. July 15, 2016) (holding that the District of Columbia's CPPA does not apply to a plaintiff who purchased, leased, or received a car in Mississippi where there was no allegation that it was otherwise "received" in the District of Columbia). Dane contends that the District Court "simply based its decision on a *prima facie* reading of the statutory language of the CPPA, without analyzing or referencing any other legal authority from the District of Columbia." Pl's Mem., Doc. No, 70, at 24. I conclude that Dane's CPPA claim fails based on a plain reading of the District of Columbia's CPPA statute.

11

suffered an ascertainable loss due to a CUTPA violation." *Id.* (internal citation and quotation omitted). A plaintiff must also prove that the ascertainable loss was caused by, or was "a result of" the prohibited act. Conn. Gen. Stat. § 42-110g(a).

Even if the AARP royalty constituted an unlawful "premium rebate" and Defendants misrepresented the nature of the royalty payment, Dane fails to establish standing under either CUTPA or CPPA.

The fee that Dane and each insured pays is an expense of the program paid out of United's CID-approved Medigap premiums, and Dane paid only the legally required rate. *See* Agreement §§ 2.46, 2.48, 2.85, 3.3.8, 6.1, 6.7. Because Dane did not pay more than the CID-approved filed rate for the coverage he received, and he could not have purchased United Medigap coverage for any other rate, *see* Conn. Gen. Stat. § 38a-481(b), he cannot plausibly allege any loss caused by United's allocation of its premium revenue to program expenses. Although Dane argues that he would have chosen another insurance company had he known about the alleged misconduct, FAC at ¶ 85, that allegation does not demonstrate that he suffered any loss from his selection of United Medigap insurance. Therefore, Dane does not meet the standing requirements under CUTPA or CPPA.

4. *Dane's Common Law Claims Fail*

In addition to consumer protection law claims, Dane also alleges (1) breach of the Medigap group insurance contract; (2) unjust enrichment; (3) breach of the covenant of good faith and fair dealing; and (4) conversion. As discussed above, the royalty that Dane pays is not an additional cost, but is instead a program cost paid out of the CID-approved rate.

Because the insurance contract does not prohibit royalty payments or program costs, Dane's breach of contract and breach of the covenant of good faith and fair dealing arguments

12

both fail. In addition, Dane does not allege any benefit that Defendants unjustly retained because the royalty payment for use of AARP's intellectual property was openly disclosed. Finally, Dane did not have ownership rights to the 4.9% of his payment because that payment was a royalty for use of AARP's intellectual property. Thus, Dane's conversion argument also fails.[4]

**IV.    Conclusion**

For the foregoing reasons, the case is dismissed and the Clerk is directed to close the file. So ordered.

Dated at Bridgeport, Connecticut, this 24th day of June 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[4] Because the action is dismissed in its entirety, the primary jurisdiction doctrine does not apply.